**Bobby L. FUTRELL, Claimant–Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Respondent–Appellee.**

No. 94–7058.

United States Court of Appeals, Federal Circuit.

Jan. 13, 1995.

M. Kinsella, Asst. Director, and Steven L. Schooner, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, were on the brief, for respondent-appellee.

Before NEWMAN, LOURIE and CLEVENGER, Circuit Judges.

Opinion for the Court filed by Circuit Judge CLEVENGER. Dissenting opinion filed by Circuit Judge NEWMAN.

CLEVENGER, Circuit Judge.

■ Bobby L. Futrell appeals from the order denying reconsideration of the December 9, 1993 Memorandum Decision of the United States Court of Veterans Appeals affirming the December 28, 1992 decision of the Board of Veterans' Appeals which denied Futrell's claim for service connection for multiple sclerosis. *Futrell v. Brown*, 6 Vet.App. 254 (1994). Futrell recognizes that this court lacks jurisdiction to review factual determinations made concerning his claim and that our jurisdiction over appeals from the Court of Veterans Appeals is limited to review of constitutional questions or questions of the validity or interpretation of a statute or regulation. 38 U.S.C. § 7292(d)(1) (Supp. V 1993); *see Johnson v. Derwinski*, 949 F.2d 394, 395 (Fed.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1683, 118 L.Ed.2d 399 (1992). Although Futrell's appeal raises questions arguably within our jurisdiction, those questions presume and depend from a purported factual determination made in the administrative assessment of Futrell's claim. Whether the alleged factual determination was made is itself a question of fact, answered against Futrell below, and beyond our jurisdiction to review. The appeal is accordingly dismissed for want of jurisdiction.

Michael P. Horan, Paralyzed Veterans of America, Washington, DC, argued, for claimant-appellant.

Jeffrey J. Bernstein, Atty., Dept. of Justice, Washington, DC, argued, for respondent-appellee. Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, James

I

Since this appeal fails because of factual matters, an extensive statement of the facts is in order. Futrell served on active duty in the U.S. Air Force from September 16, 1966 to September 15, 1970. In March of 1990, Futrell was diagnosed as probably having multiple sclerosis. The examining physician

at that time noted that Futrell reported that in 1977 or 1978 he had right optic neuritis. Optic neuritis is one of the recognized symptoms of multiple sclerosis.

On May 24, 1990, Futrell filed a claim in the Winston–Salem, N.C. Regional Office (RO) of the Veterans Administration based on an asserted service connection for multiple sclerosis. In his application, Futrell asserted that Dr. David White in Statesville, N.C. had treated him for "optical" neuritis in 1976. A veteran is entitled to service connection for a disease or injury incurred in or aggravated by military service. 38 U.S.C. § 1110 (Supp. V 1993). In addition, Futrell benefits from a presumption that if his multiple sclerosis manifested itself to a degree of ten percent or more within seven years from the date of his discharge from military service, it will be presumed to have been incurred in or aggravated by service, even absent evidence of the disease's presence during military service. 38 U.S.C. § 1112(a)(4) (Supp. V 1993). That presumption is rebuttable only by affirmative evidence to the contrary. 38 U.S.C. § 1113 (Supp. V 1993). Because optic neuritis is an early symptom of multiple sclerosis, Futrell sought to demonstrate that he had been treated for that symptom in 1976 and before September 15, 1977.

The only evidence in Futrell's May application supporting his claim was his reference to Dr. White. The RO obtained Futrell's service medical records and the records of his private medical treatment before and after his service. Those records disclosed various ailments but no diagnoses of multiple sclerosis or optic neuritis. On June 27, 1990, the RO wrote Dr. White requesting that he provide the RO with any evidence of any treatment he provided to Futrell "on or about 1976." Dr. White's written reply was "No longer have these records." On August 7, 1990, the RO issued a rating decision denying Futrell's claim to service connection. The decision stated that Futrell's records contained no evidence to support his claim other than Dr. White's unsubstantiated statement, and that Futrell's medical records between 1976 and 1980 disclosed various ailments but no evidence of multiple sclerosis. Futrell

was notified in writing on September 12 of this decision.

The RO later received further information concerning Futrell's claim. In October of 1990, three letters were added to the evidence in Futrell's file, each written by persons associated with Futrell during his tenure from 1976 to 1980 as pastor of the Winterville Free Will Baptist Church. One letter, from a Deacon of the church, recalling a prayer said for "some physical illness of Dr. Futrell," stated that "I do not remember specifically what the problem was at this time." That letter did not indicate when between 1976 and 1980 the prayer was said. A second letter recalled that Futrell had spoken of a "problem with his eyes" during an unspecified time when Futrell helped a friend to construct a garage. The third letter, from a former Deacon, stated that Futrell had reported to the Deacon Board at an unspecified time between 1976 and 1980 "his inability to see properly."

On June 21, 1991, Futrell's representative requested the RO to reconsider the August 7 unfavorable rating decision. The representative contended that the previous decision was based on the absence of any records submitted by Dr. White to support Futrell's claim that Dr. White had made an optic neuritis diagnosis sometime in 1976. The request stated that

The doctor, because of the importance of the need for evidence, redoubled his efforts to search his records, because, based on memory, he "Couldn't remember who he treated a week ago". Dr. White's effort was successful, and his attached letter conclusively establishes one of the most significant symptoms, which is optic neuritis, in the veterans right eye, of multiple sclerosis.

The letter from Dr. White to which the request refers states that "I examined this patient in 1976 and made a diagnosis of optic neuritis in the right eye."

Given Dr. White's candid assessment of his memory, as reported to the RO by Futrell's representative, the RO then wrote Dr. White asking him if the statement in his letter was "based on memory only or do you now have the original treatment records?" Dr. White

wrote in reply that his statement "was based on memory as I was never able to locate the record on this patient."

On October 11, 1991, the RO issued another rating decision, again denying Futrell's claim. That decision considered Dr. White's letter and his subsequent reply that his statement was based on his memory only. The three letters from Futrell's community colleagues were also considered. Absent any documentation of treatment for optic neuritis within the presumptive period, Futrell's claim was denied.

Subsequently, Futrell's representative asserted that both of the RO rating decisions were erroneous in failing to accept Dr. White's asserted diagnosis and the three lay letters as sufficient to create a benefit of the doubt adequate to support Futrell's claim for service connection.

A veteran's claim can be assisted by the "benefit of the doubt" or "reasonable doubt" standard set forth in 38 U.S.C. § 5107(b) (Supp. V 1993) and 38 C.F.R. § 3.102 (1991). Section 5107(b) provides that when, after consideration by the RO of all the evidence in a claim, an approximate balance of positive and negative evidence remains regarding an issue material to the outcome, "the benefit of the doubt in resolving each such issue shall be given to the claimant." Section 3.102 states that "reasonable doubt" means "a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility" and requires "reasonable doubt" to be resolved in the claimant's favor.

On November 14, 1991, the RO issued another rating decision, this time denying Futrell's assertion that he was erroneously deprived of the benefit of the reasonable doubt standard. That decision explained that the RO considered all the circumstances concerning Dr. White and the three lay statements. The decision found that the evidence favorable to Futrell was either "vague or undocumented" and that "Dr. White is relating by memory only." The RO concluded that the evidence as a whole did not satisfy the requirements for invocation of the reasonable doubt standard.

Futrell next filed a notice of disagreement with the RO's action on his claim, as the first step of taking an appeal to the Board. The RO prepared a statement of the case to assist Futrell's appeal. The statement explained in detail the history of Futrell's claim and concluded that

Although Dr. White's statement does indicate that the veteran was treated for optic neuritis in 1976, the lack of material evidence does not give rise to a substantial doubt and one within the range of probability as distinguished from speculation or remote possibility. The lay statements also do not raise a substantial doubt in favor of granting the benefit sought.

Before Futrell's appeal was decided, however, his representative again sought reconsideration by the RO, contending that Dr. White's statement that he treated Futrell for optic neuritis in 1976 alone is sufficient to require acceptance of Futrell's claim for service connection. In response on February 27, 1992, the RO adjudication officer informed Futrell that the RO accepted Dr. White's statement at face value and did not question the credibility of the statement, which had to be "considered in context with all the facts and documentary evidence of record." In addition, responding to Futrell's contention that he was denied the benefit of the reasonable doubt doctrine, the adjudication officer stated that even

[c]onceding the probability of a diagnosis of optic neuritis in 1976 by Dr. White.... [w]ith a diagnosis of [optic neuritis] from memory, the lack of positive findings of [optic] neuritis in 1980 along with the sincere but inconclusive statements from friends we concluded the balancing of evidence was not such as to raise the issue of reasonable doubt.

In a decision dated December 28, 1992, the Board denied Futrell's claim. *In the Appeal of Futrell,* No. 92–12 932 (Bd.Vet.App. Dec. 28, 1992). The decision notes that the only evidence supporting Futrell's claim is the lay correspondence and Dr. White's statement. Considering that evidence, the Board stated as follows:

We are obliged to assess both the credibility and the probative value of lay state-

ments, and, having done so, we find that while none is incredible, neither is any of the three probative of the issue at hand. The issue is whether or not symptomatology reasonably attributable to multiple sclerosis manifested within the seven year presumptive period. Two of the three statements are able to assert that the veteran's ailment was visual, but, as noted earlier, none is able to state with any particularity when the problem appeared. We find vague assertions that the veteran had a "problem with his eyes" at some time between 1976 and 1980 to be insufficient to establish a reasonable probability that optic neuritis occurred prior to September 15, 1977.

The more impressive evidence of that occurrence is the statement of Dr. White, that he treated the veteran for optic neuritis in 1976. This statement, since it places a recognized early symptom of multiple sclerosis within the presumptive period, might well establish the veteran's entitlement to service connection. We are not, however, persuaded of the accuracy of the statement with respect to the time of treatment. The first mention of optic neuritis in the record occurs in a history given by the veteran in February 1980 on seeking treatment for progressive weakness in his legs. At that time, he placed the occurrence and treatment of optic neuritis in 1977 or 1978. We note also, that the RO confirmed that the physician's statement was based upon his memory and not upon the actual treatment records. We find this troubling since the veteran's representative has quoted this same physician as stating that he "couldn't remember who he treated a week ago." (citation omitted). In the absence of objective evidence of the occurrence of the symptoms of multiple sclerosis within seven years of the veteran's discharge, we must carefully examine the available subjective evidence for consistency. At no time prior to 1990, when multiple sclerosis was first suspected, did the veteran give a history of unexplained physical complaints within that time period that may reasonably be attributed to that disease. In retrospect, having settled on the incidence of optic neuritis as the initial symptom of multiple sclerosis, no one currently on record, not the veteran, not the writers of the three lay statements, and not Dr. White, is able to establish with any certainty that it appeared prior to September 1977.

The veteran has claimed that he is entitled to the benefit of the doubt in this matter; however, we cannot agree that doubt raised here is reasonable. As noted earlier, service connection of a disorder must be established by affirmative evidence, 38 C.F.R. § 3.303(a), and a reasonable doubt is "one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim." § 3.102. This latter regulation goes on to state that such a doubt must be a "substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility." (citation omitted).

The only evidence of the occurrence of the disorder within the seven year period is the statement of the physician, which is questionable as to the asserted time of treatment, and the lay statements, which only place the necessary occurrence somewhere within a four year time frame, less than half of which falls within the presumptive period. The establishment of a seven year period within which the presumption of service connection may be asserted is a generous acknowledgment of both the insidious nature of the disease's onset, and its devastating consequences. However, it is also a limit. We are absent affirmative evidence placing the appearance of characteristic symptomatology of multiple sclerosis within seven years of discharge. To assert the appearance of such symptoms on this record would require that we resort to speculation.

*Id.,* slip op. at 6–8.

The Court of Veterans Appeals in a Memorandum Decision summarily affirmed the decision of the Board. *Futrell v. Brown,* No. 93–351, 1993 WL 534786 (Ct.Vet.App. Dec. 9, 1993). The decision noted that the Board had found the "lay statements were not probative of appellant's claim, and that Dr. White's statement was not persuasive with

respect to the time of treatment." Futrell petitioned for reconsideration, arguing that the RO had conceded in a factual finding favorable to Futrell that Dr. White diagnosed optic neuritis in 1976, and that the Board lacks the legal authority to reverse RO findings that are favorable to a claimant. Alternatively, Futrell argued that even if the Board does not lack such authority, it cannot reverse claimant-favorable RO fact findings without first giving the claimant notice of its intention and an opportunity to be heard on the issue. The petition for reconsideration was denied and this appeal followed.

## II

Futrell presents three arguments on appeal, the first two of which share a common factual determination asserted by Futrell and vigorously denied by the government. Futrell asserts that the RO, in its statement of the case and in the response of February 27, 1992, conceded as a matter of fact that Dr. White diagnosed Futrell with optic neuritis in 1976. The government counters, saying that alleged "concession" was solely for purposes of responding to Futrell's contention that he was entitled to the benefit of the reasonable doubt doctrine, and that the evidence overall did not support Futrell's claim to diagnosis of optic neuritis *in 1976*.

On the assumption that the RO did make such a favorable factual finding about the date of Dr. White's diagnosis (the diagnosis itself not being challenged by the government), Futrell argues first that the Board lacks the legal authority to ignore or reverse such a finding. According to Futrell, as a matter of law, the Board may overturn or disregard only factual findings unfavorable to a veteran claimant. Second, Futrell argues that even if the Board possesses such legal authority, it cannot exercise the authority without first giving notice to the veteran of its intent to do so, and then affording an opportunity for the veteran to respond on the issue. As a third argument, Futrell contends that the RO erred by requiring him to support his claim with documentary proof of diagnosis of multiple sclerosis within the specified time period.

The government urges us to dismiss the appeal for want of jurisdiction, on the ground that Futrell presents only issues of fact and questions of the application of laws to the facts of his case, each being outside our jurisdictional mandate.

## III

■ We need not decide whether Futrell's first two arguments raise questions of statutory interpretation or are of constitutional dimension sufficient to invoke our jurisdiction, because we cannot reach those questions unless we first determine that Futrell indeed obtained a favorable factual determination in support of his claim that was ignored or reversed by the Board in denying his claim. We lay to one side the matter of why Futrell's claim was not approved by the RO if indeed it made the factual finding necessary to support his claim. It suffices here to note that the debate between Futrell and the government over whether the RO conceded the merit of Futrell's case is itself a factual matter, as the expository history of the case demonstrates. Futrell's claim was denied for failure to demonstrate that Dr. White's otherwise uncontested diagnosis was made in the required time period. This is precisely the kind of issue that we may not consider.

■ With regard to Futrell's third issue, it is patently certain from the record before this court that the RO did not misinterpret its statutory authority by imposing a "documentary proof" requirement on Futrell. The RO frequently indicated that Futrell provided no documentation of an optic neuritis diagnosis in the required time period. Futrell was free to meet that lack of evidence with other forms of evidence, but failed to do so. The RO did not *require* documentary proof of Futrell's claim.

The appeal is accordingly

*DISMISSED.*

No costs.

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent from the court's dismissal for lack of jurisdiction. Mr. Futrell

raises questions of compliance and interpretation, in connection with the procedures followed by the Board of Veterans' Appeals, that are within our jurisdictional assignment. U.S.Code Title 38, § 7292 provides in part:

§ 7292(d)(1) ... The court shall hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the Court of Veterans Appeals that the Court of Appeals for the Federal Circuit finds to be ... (B) contrary to constitutional right, power, privilege, or immunity; ... (D) without observance of procedure required by law.

The Federal Circuit is required to review the decisions of the Court of Veterans Appeals with respect to issues based on the Constitution or the validity or interpretation of any statute or regulation. The Court of Veterans Appeals in turn is required to assure that the Board of Veterans' Appeals observes the requisite procedures. 38 U.S.C. § 7261.

Review of the issues presented by Mr. Futrell does not require this court to ascertain the correctness of any factual finding, or to apply statute or regulation to any fact. The facts that are recited at length by the panel majority are irrelevant to the issues before us. The issues on appeal were conscientiously delimited by Mr. Futrell to those within this court's assignment.

Mr. Futrell complains that the Board overruled a critical factual finding in his favor, without giving him notice that this issue was being considered, and without affording him an opportunity to respond. He raises a serious question of procedural law and due process, unrelated to the correctness of any factual finding. It is within this court's jurisdiction to determine whether there is merit to this matter of compliance with statutory and regulatory procedure.

Relevant is VA General Counsel Precedent Opinion No. 05–92, which is by law binding upon the Board, *see* 38 U.S.C. § 7104(c):

(c) The Board shall be bound in its decisions by the regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department.

*See also* 38 C.F.R. §§ 19.5, 20.101(a). Opinion No. 05–92 states that the Board should advise a claimant, in advance, of the possibility that the Board will reverse a favorable finding made by a regional office in an appealed claim.

The provision of notice and an opportunity to respond are fundamental to procedural due process. As the Court of Veterans Appeals put it:

The entire thrust of the VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process.

*Thurber v. Brown,* 5 Vet.App. 119, 123 (1993). The government argues that notice is not required, stating that because of the nature of the proceeding "no need arises to inform the appellant in advance that the BVA would review the issue." The validity of this position, especially in light of Opinion No. 05–92, is within this court's jurisdictional assignment, based on Constitution, statute, and regulation. Further, an agency must follow its own procedures. *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon the agency to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."); *Vitarelli v. Seaton,* 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959) (Secretary bound by procedures he promulgated, even though without such regulations he could have discharged petitioner summarily).

None of the procedural issues raised by Mr. Futrell was reviewed, or apparently deemed significant, by the Court of Veterans Appeals. It was as improper for the Court of Veterans Appeals as it is for us to conclude that if the facts appear to weigh against Mr. Futrell, it is unnecessary whether he received the mandated process. Resolution of this issue requires of this court no findings of fact or application of law to facts. However, whether Mr. Futrell received "the procedure required by law" is within our jurisdictional mandate. Thus I respectfully

dissent from the court's dismissal of the issue as beyond our jurisdiction.